UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TAIWAN SEMICONDUCTOR MANUFACTURING CO., LTD., Plaintiff, v. TELA INNOVATIONS, INC., Defendant. | Case No.  14-cv-00362-BLF **ORDER (1) GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS; (2) GRANTING IN PART DEFENDANT'S MOTION TO STRIKE** [Re:  ECF No. 18] |

United States District Court
Northern District of California

Defendant Tela Innovations, Inc. ("Defendant" or "Tela") brings a Partial Motion to Dismiss Plaintiff Taiwan Semiconductor Manufacturing Co.'s ("Plaintiff" of "TSMC") Complaint. Plaintiff brings suit alleging four causes of action: fraud-deceit, breach of a contractual non-disclosure agreement, trade secret misappropriation, and breach of a contractual cooperation and licensing agreement. (Compl., ECF 7 at 10-15) Defendant moves to dismiss Plaintiff's first cause of action for fraud-deceit for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), and for failure to meet the heightened pleading requirements for fraud under Rule 9(b). In addition, Defendant moves to strike Plaintiff's allegation of "willful and malicious" conduct in its third cause of action for trade secret misappropriation, pursuant to Rule 12(f).

Having considered the briefing and oral argument of the parties, the Court GRANTS Defendant's Partial Motion to Dismiss, with leave to amend, with regard to Plaintiff's first cause of action for fraud-deceit. The Court further GRANTS IN PART Defendant's Motion to Strike, with leave to amend.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

# I.      BACKGROUND

## A.      Procedural History

Plaintiff filed its initial Complaint in the above-captioned action on January 24, 2014. (ECF 1) Three days later, on January 27, 2014, it filed a Corrected Complaint. (Compl., ECF 7) On March 20, 2014, Defendant filed its Partial Motion to Dismiss and Motion to Strike ("Mot. to Dismiss"). (ECF 18) Plaintiff filed its Opposition ("Opp. to Mot. to Dismiss") on April 3, 2014. (ECF 20) Defendant replied on April 10, 2014. (ECF 21) The case was reassigned to the undersigned judge on April 17, 2014, and oral argument was held on July 10, 2014.

## B.      Factual Allegations

Plaintiff is a Taiwanese corporation with its principal place of business in Hsinchu, Taiwan. (Compl., ECF 7 ¶ 2) Defendant is a Delaware corporation with its principal place of business in Los Gatos, California. (*Id.* ¶ 3)

Plaintiff describes itself as a "provider of semiconductor fabrication services for customers who design their own circuit layouts, but who either lack their own semiconductor manufacturing expertise and facilities, or simply wish to use TSMC's high quality fabrication services or technology." (*Id.* ¶ 2) In order for a customer to utilize TSMC's fabrication services, their circuitry designs must "comply with certain 'Design Rules' that TSMC develops for each of its process technology nodes and for each of the general types of chips that can be made at a given node." (Compl. ¶ 14) TSMC states that these Design Rules are "an important and competitively sensitive aspect of TSMC's technology," that are treated by TSMC as "highly confidential, proprietary information." (*Id.*)

In 2006, Tela approached TSMC with a design idea for "a highly regularized circuit architecture," (Compl. ¶ 17), usable with "process nodes of 90 [nanometers ("nm")] or smaller" in size. (*Id.*) This "gridded array approach" was included in a patent application, Provisional Application No. 60/781,288, filed with the United States Patent and Trademark Office ("USPTO") on March 9, 2006. (*Id.*) TSMC alleges that, as of May 2006, Tela's design remained "conceptual and only in the earliest stages of testing," and that Tela was unsure whether fabricating Tela's design would be "feasible or cost-effective." (*Id.* ¶ 18) TSMC states that Tela did not know

2

United States District Court
Northern District of California

whether TSMC's "Design Rules could be 'pushed' sufficiently to develop a cell library incorporating Tela's approach." (*Id.*) To determine whether fabrication was possible, and to assist in the design of the chip architecture, Tela subsequently requested that "TSMC [] disclose its 65 [nanometer ("nm")] and 45 nm Design Rules to Tela," (*id.* ¶ 19), so that Tela could propose "Design Rule changes that might be needed to accommodate its gridded design." (*Id.*)

On May 16, 2006, TSMC and Tela entered into a Nondisclosure Agreement ("2006 NDA"), whereby TSMC would provide Tela copies of several of its confidential Design Rules. (*Id.* ¶ 20) The 2006 NDA applied "only to geometrics greater than 32 nm," (*Id.*) and permitted Tela "*only* [to] use [TSMC's] Confidential Information for the purpose of mutually beneficial technical and business developments." (*Id.* (emphasis and brackets in Complaint)) The 2006 NDA further prohibited Tela "from using such Confidential Information for *any other purposes.*" (*Id.* (emphasis in Complaint)) After both parties signed the 2006 NDA, TSMC provided to Tela copies of TSMC's 65 nm and 45 nm confidential Design Rules. (*Id.* ¶ 21)

From 2006 through 2009, TSMC and Tela "collaborated to test the viability of Tela's gridded design approach." (*Id.*) During this time, TSMC states that it "disclosed to Tela . . . that certain aspects of Tela's gridded design approach were unnecessary, counterproductive, and not commercially viable." (*Id.*) TSMC alleges that, through the disclosure of its Design Rules and other shared information, it informed Tela of "the ways in which TSMC's own [integrated circuit] design parameters and approach differed from the invention that Tela had disclosed in its provisional patent application No. 60/781,288." (*Id.*)

In November 2008, Tela received U.S. Patent No. 7,446,352 ("the '352 Patent"), which TSMC describes as "the first patent to mature from [Tela's] March 9, 2006 provisional application." (*Id.* ¶ 22) TSMC alleges, however, that:

> [O]n September 17, 2008, just two months before it received the '352 patent, Tela had applied for another patent that claimed subject matter that it did not invent[,] . . . [and] instead made use of confidential information about TSMC's different and better option for a 45 nm design architecture that TSMC had provided to Tela for their mutual benefit, not for Tela to use for a patent application.

(*Id.* ¶ 23) TSMC alleges that this Application, No. 12/212,562, along with another Application,

1    No. 12/402,465, improperly made use of TSMC's confidential information, provided by TSMC to

2    Tela pursuant to the 2006 NDA. (*Id.*)

3    　　　On January 23, 2009, Tela and TSMC entered into a collaboration agreement ("2009

4    Agreement"), in order to "co-develop 65 and 45 nm cell libraries, layouts, and other materials

5    incorporating Tela's and TSMC's technology." (*Id.* ¶ 24) TSMC states that, during this

6    collaboration, Tela knew that TSMC's 65 nm and 45 nm Design Rules did not practice "at least

7    two essential elements" of the gridded design included in Tela's '352 Patent, (*id.* ¶ 25), but that

8    Tela "did not know what TSMC planned for TSMC's newest, 32 or 28 nm process node." (*Id.*)

9    　　　TSMC alleges that, despite the 2006 NDA and 2009 Agreement, Tela gave TSMC's

10   confidential information to Tela's patent agents in order to "amend the claims of continuation

11   patent applications to attempt to cover products designed in accordance with TSMC's 32/28 nm

12   Design Rules." (*Id.* ¶ 25) In March 2009, Tela and TSMC signed an amendment to their 2006

13   NDA, whereby TSMC would provide Tela its 32/28 nm Design Rules, which Tela agreed to keep

14   confidential and use only for the mutual benefit of the companies. (*Id.* ¶ 26) On March 13, 2009,

15   TSMC gave Tela its 32/28 nm Design Rules. (*Id.* ¶ 27) TSMC alleges that, following this

16   exchange of the 32/28 nm Design Rules, Tela "began amending its continuation applications . . .

17   so as to claim subject matter that it did not invent, but that was designed to attempt to cover

18   products designed in accordance with TSMC's 28 nm Design Rules." (*Id.* ¶ 28) TSMC avers that

19   its confidential information is "reflected in the claims" of at least four Tela patents. (*Id.* ¶ 29)

20   TSMC additionally alleges that Tela "misappropriated certain TSMC trade secret information"

21   disclosed in the 28 nm Design Rules, (*id.* ¶ 30), and used those trade secrets to "add a limitation to

22   each of the independent claims" of Patent Application No. 12/717,887 "so as to overcome a

23   rejection by the examiner," (*id.*), which resulted in Tela receiving U.S. Patent No. 8,490,043 ("the

24   '043 Patent"). (*Id.*)

25   　　　TSMC thus brings four causes of action against Tela: fraud-deceit, breach of the 2006

26   NDA, trade secret misappropriation, and breach of a 2010 cooperation and licensing agreement.

27   Tela moves to dismiss the first cause of action for fraud-deceit, pursuant to Rule 12(b)(6) and Rule

28   9(b), and moves to strike Plaintiff's allegation of "willful and malicious" conduct in its third cause

United States District Court
Northern District of California

of action for trade secret misappropriation, pursuant to Rule 12(f).

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(6) Motion to Dismiss

#### 1.   General Requirements

A motion to dismiss under Rule 12(b)(6) concerns what facts a plaintiff must plead on the face of his complaint. Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Any complaint that does not meet this requirement can be dismissed pursuant to Rule 12(b)(6). In interpreting Rule 8(a)'s "short and plain statement" requirement, the Supreme Court has held that a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which requires that "the plaintiff plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not ask the Plaintiff to plead facts that suggest he will probably prevail, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519, F.3d 1025, 1031 (9th Cir. 2008). The Court is not, however, forced to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1127 (N.D. Cal. 2014) (citing *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011)).

#### 2.   Fraud Pleadings Under Rule 9(b)

When a party pleads a cause of action for fraud or mistake, it is subject to the heightened pleading requirements of Rule 9(b). "In alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Rule 9(b) demands that the circumstances constituting any alleged fraud be plead "specific[ally] enough to give defendants notice of the *particular misconduct* . . . so that they can defend against the charge

and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) (citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)) (emphasis added). Claims of fraud *must* be "accompanied by the who, what, when, where, and how of the misconduct alleged." *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

### B.      Rule 12(f) Motion to Strike

Rule 12(f) permits a court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are "generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties." *Sliger v. Prospect Mortg., LLC*, 789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2012) (citing 5A Wright and Miller, Federal Practice and Procedure: Civil 2d at 1380); *see also U.S. v. Wang*, 404 F. Supp. 2d 1155, 1156 (N.D. Cal. 1991) (stating that "motions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation"). If a claim is stricken, "leave to amend should be freely given when doing so would not cause prejudice to the opposing party." *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826 (9th Cir. 1979).

## III.      DISCUSSION

### A.      Motion to Dismiss the Fraud-Deceit Claim

To state a claim for fraud under California law, a Plaintiff must allege (1) a misrepresentation; (2) knowledge of falsity (or scienter); (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damages. *See, e.g., Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003).

Defendant makes two arguments in favor of dismissing Plaintiff's claim for fraud-deceit. First, it argues that Plaintiff's claim fails as a matter of law because Plaintiff "fails to allege material elements necessary to sustain recovery under a cognizable legal theory." (Mot. to Dismiss at 6) Second, Defendant argues that Plaintiff fails to satisfy the heightened pleading requirements of Rule 9(b). (*Id.*)

United States District Court
Northern District of California

6

1      **1.      Plaintiff is Not Precluded From Bringing a Claim for Fraud-Deceit as a**

2      **Matter of Law**

3      Defendant argues that the first cause of action alleging fraud-deceit cannot stand because it

4      lacks a cognizable legal theory. Claiming that, as a matter of law, a continuation patent cannot

5      contain new matter, Defendant urges that Plaintiff should be barred from asserting a claim

6      premised on such conduct. (*See* Opp. to Mot. to Dismiss at 7) Defendant argues that Plaintiff's

7      allegation that Tela used TSMC's "confidential 28 nm information" to "shape or amend" its

8      "continuation patent applications to claim subject matter that it did not invent," (Compl. ¶¶ 36-39),

9      is implausible due to the legal definition of a continuation patent. Defendant argues that Tela was

10     granted the requested patents, and thus any "new matter" would have been rejected by the Patent

11     and Trademark Office had it ever existed.

12     Plaintiff argues that a legal definition cannot be deemed to preclude the wrongful conduct

13     of incorporating stolen information in a continuation patent. In fact, Plaintiff points to a number of

14     cases in which courts have made just such a finding. *See Anascape, Ltd. v. Nintendo of Am., Inc.*,

15     601 F.3d 1333 (Fed. Cir. 2010); *Agilent Techs., Inc. v. Affymetrix, Inc.*, 567 F.3d 912 (Fed. Cir.

16     2009); *Schindler v. Cisco Sys., Inc.*, 726 F. Supp. 396 (D. Del. 2010).

17     Stepping back from these arguments, the Court notes that Defendant has properly stated

18     the characteristics of a continuation patent. In *Masimo Corp. v. Philips Electronics North America

19     Corp.*, 918 F. Supp. 2d 277 (D. Del. 2013), the court explained that "[a] continuation patent is

20     filed to pursue additional claims to an invention disclosed in an earlier application (the parent

21     application) that has not yet been issued or abandoned." *Id.* at 283 n.34 (citing Harmon, et al.,

22     *Patents and the Federal Circuit*, 10th ed., § 18.1(f), 2011). Further, a continuation patent

23     application contains "the same specification[s]" as its parent application and "claims the same

24     invention" as its parent application. *Id.* at 283 n.34. Federal regulations expressly define and limit

25     the contents of a continuation patent application. *See* 37 C.F.R. § 1.53(d)(2)(ii) (limiting the

26     contents of a continuation patent application to "subject matter disclosed in the prior application");

27     *see also Transco Prods., Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 555 (Fed. Cir. 1995).

28     Defendant also properly reminds the Court that patents are presumed valid, citing the

1    Supreme Court's recent decision in *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. ---, 131 S. Ct.

2    2238, 2242 (2011), and that Plaintiff has not stated a claim for invalidity. The import of that

3    presumption is particularly significant here. This Court *must* presume the validity of the issued

4    patents identified by Plaintiff as containing its proprietary information. As part and parcel of that

5    presumption, the Court must further presume that the continuation patent application complied

6    with applicable law regarding the exclusion of new subject matter.

7         Thus, the claim for fraud-deceit, as presented in the Complaint, cannot stand. Plaintiff has

8    failed to allege any facts to show that its confidential information was contained in Defendant's

9    various continuation patent applications. Relying only on conclusory allegations devoid of factual

10   content, Plaintiff cannot go forward on this claim. *See Iqbal*, 556 U.S. 662, 678 ("[T]he plaintiff

11   [must] plead factual content that allows the court to draw the reasonable inference that the

12   defendant is liable for the misconduct alleged."); *see also Twombly*, 550 U.S. 554, 570 (rejecting

13   mere conclusory pleadings and requiring that plaintiffs state "enough facts to state a claim to relief

14   that is plausible on its face"). The Court will allow Plaintiff the opportunity to amend the

15   Complaint to plead around the presumption of validity of the issued patents. Plaintiff must allege

16   facts that identify the precise portions of each continuation patent application that contain its

17   protected information. To the extent that such amendments cause the Plaintiff to include in an

18   amended complaint any trade secrets, a request to seal those portions of the amended complaint

19   would be appropriate.

20              **2.      Plaintiff Has Not Adequately Pled Its Claim for Fraud-Deceit**

21        Defendant's second argument is that Plaintiff has failed to adequately plead its fraud-deceit

22   claim with the specificity required by Rule 9(b). Defendant argues that Plaintiff must allege the

23   "who, what, when, where, and how" of any fraudulent misconduct alleged against Defendant, *see*

24   *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003), and that TSMC has failed to

25   do so.

26        Defendant contends that Plaintiff's Complaint is defective in several ways. First, that

27   Plaintiff has "failed to properly plead a misrepresentation." (Mot. to Dismiss at 9). Second, that

28   Plaintiff fails to allege with any particularity the individuals at Tela who made the alleged

United States District Court
Northern District of California

8

1    misrepresentations, thus failing to properly plead the "who" for purposes of the *Vess v. Ciba-*

2    *Geigy Corp.* test. (*Id.* at 11) Third, that Plaintiff fails to adequately plead resulting damages. (*Id.* at

3    14)

4        Plaintiff responds that its Complaint sets forth a detailed history of its seven-year business

5    relationship with Tela. TSMC points to paragraphs 25 through 30 and 36 through 39 of the

6    Complaint in order to show that it has adequately met the heightened pleading standard for fraud

7    under Rule 9(b).

8        The Court finds Defendant's argument persuasive. To successfully state a claim for fraud,

9    Plaintiff must allege facts to support the required elements, including: a false representation,

10   knowledge of its falsity, intent to defraud, justifiable reliance, and resulting damages. *See, e.g.*,

11   *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). The Complaint alleges only

12   in general terms the nature of the misrepresentations that preceded the signing of the March 9,

13   2009 amendment to the NDA that allowed the release of the 32/28 nm Design Rules to Tela. (*See*

14   Compl. ¶ 26) Although TSMC alleges portions of the statements made by Tela, it fails to identify

15   who made the false representations. TSMC further does not identify who at TSMC received these

16   allegedly false representations. TSMC also fails to allege what information was wrongly disclosed

17   by Tela.

18       TSMC must identify the portions of its protected information Tela received and then

19   incorporated into its continuation patent applications, in order to establish damages caused by the

20   alleged misrepresentation. *See Jobscience, Inc. v. CV Partners, Inc.*, 2014 WL 93976, at *5 (N.D.

21   Cal. Jan. 9, 2014) (finding plaintiff's complaint "devoid of any specific allegations of who, what,

22   when, where, and how the allegedly fraudulent conduct occurred . . . [t]his falls below that

23   heightened pleading requirements of FRCP 9(b)). The Court is satisfied, however, the Plaintiff has

24   alleged when the statements were made. (Compl. ¶ 26)

25       The Court agrees with Defendant that the Complaint supplies little more than neutral facts

26   and conclusory allegations to support the fraud claim. *See Twombly*, 550 U.S. 554, 570. More is

27   required under Rule 9(b). The Motion to Dismiss is hereby GRANTED as to the first cause of

28   action for fraud-deceit, with leave to amend.

United States District Court
Northern District of California

United States District Court
Northern District of California

**B.    Motion to Strike the Trade Secret Misappropriation Claim and Plea for Punitive Damages**

Plaintiff brings its third cause of action under the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3246 *et seq.*, alleging that Defendant engaged in "willful and malicious" trade secret misappropriation. (Compl. ¶ 55) This willful and malicious conduct, Plaintiff alleges, entitles it to "exemplary damages equal to twice the actual damages caused by Tela's misappropriation," pursuant to §§ 3426.3(c) and 3426.4. (*Id.*) The CUTSA provides for the civil recovery of actual loss or other injury caused by the misappropriation of trade secrets. Cal. Civ. Code § 3246.3. To state a claim under the CUTSA, a plaintiff must allege "(1) the existence of a trade secret and (2) misappropriation of the trade secret." *See Ikon Office Solutions, Inc. v. Rezente*, 2010 WL 5129293, at *2 (E.D. Cal. Dec. 9, 2010).

Defendant moves to strike Plaintiff's allegations that the alleged trade secret misappropriation was "willful and malicious," (Compl. ¶ 55), because its "failure to identify any particular individuals . . . renders its 'willful and malicious' allegation and the corresponding prayer for 'exemplary and punitive damages' fatally insufficient." (Mot. to Dismiss at 15) Defendant argues that under California law, corporate entities are incapable of willful and malicious conduct, and thus that Plaintiff's allegation is untenable having failed to make any claims in the Complaint of conduct by particular individuals. (*Id.*)

Plaintiff makes two arguments in response. First, it argues that "[a]llegations regarding a party's state of mind are not subject to any heightened pleading standard in federal court," (Opp. to Mot. to Dismiss at 13), and that its allegations for willful and malicious trade secret misappropriation do not "require[] anything more than notice pleading under Rule 8(a)." (*Id.*) Second, it argues that its prayer for relief is governed under the CUTSA, not the general California punitive damages statute of Section 3294, (*id.*), but that even if the prayer is also governed by Section 3294, courts in this district have held conclusory averments of malice or fraud under Section 3294 sufficient under the federal pleading standards. (*Id.* at 14).

Plaintiff, however, is incorrectly conflating pleading requirements with the need to sufficiently allege all elements of a claim. The CUTSA states that if "willful and malicious

United States District Court
Northern District of California

1    misappropriation exists, the court may award exemplary damages in an amount not exceeding

2    twice" the damages otherwise received. Cal. Civ. Code § 3426.3(c). Under California law, a

3    corporate entity is incapable of engaging in willful and malicious conduct for purposes of punitive

4    damages liability. Cal. Civ. Code § 3294(b) ("With respect to a corporate employer, the advance

5    knowledge and conscious disregard, authorization, ratification, or act of oppression, fraud, or

6    malice *must be on the part of an officer, director, or managing agent of the corporation*.")

7    (emphasis added); *see also Alcaraz v. Wachovia Mortg., FSB*, 2009 WL 160308, at *12 (E.D. Cal.

8    Jan. 21, 2009) ("[S]ection 3294(b) requires proof of wrongful conduct *among corporate leaders*.")

9    (citing *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 166 (2000) (emphasis added)).

10        Under California punitive damages law, a company simply cannot commit willful and

11   malicious conduct – only an individual can.  Plaintiff's failure, then, to include the names or titles

12   of *any* individual actor is a fatal defect in its pleading of "willful and malicious" conduct. *Cf.*

13   *Xerox Corp. v. Far W. Graphics, Inc.*, 2004 WL 2271587, at *2 (N.D. Cal. Oct. 6, 2004) ("FWG

14   requests punitive damages, but fails to allege any conduct by an officer, director or managing

15   agent of Xerox sufficient to support the imposition of punitive damages against Xerox.").

16        In considering Defendant's request that the Court strike Plaintiff's claim for exemplary

17   damages, the Court is mindful of the Ninth Circuit's decision in *Whittlestone, Inc. v. Handi-Craft*

18   *Co.*, in which the circuit court held that "Rule 12(f) does not authorize district courts to strike

19   claims for damages on the ground that such claims are precluded as a matter of law." *Whittlestone*,

20   618 F.3d 970, 974-75 (9th Cir. 2010). However, in granting Defendant's Motion to Strike, the

21   Court is merely striking Plaintiff's allegation of "willful and malicious" conduct. (Compl. ¶ 55)

22        The Court thus GRANTS IN PART Defendant's Motion to Strike Plaintiff's allegations of

23   "willful and malicious" conduct against Tela, because TSMC has not pled any facts to support

24   willful and malicious conduct by individuals. The claim that trade secret misappropriation was

25   "willful and malicious" in Plaintiff's third cause of action is STRICKEN, with leave to amend.

26

27

28

**IV.    ORDER**

  For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss with regard to Plaintiff's first cause of action for fraud-deceit, with leave to amend. The Court further GRANTS IN PART Defendant's Motion to Strike with regard to Plaintiff's allegation of "willful and malicious" conduct in Plaintiff's third cause of action for trade secret misappropriation, with leave to amend. Plaintiff, should it elect to file an Amended Complaint, shall do so no fewer than twenty-one (21) days from the issue of this Order.

  **IT IS SO ORDERED.**

Dated: July 24, 2014

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

12